WHIRLPOOL CORPORATION, Appellant, *v.* REGIS LEASING CORPORATION, Respondent.

First Department, March 21, 1968.

*George R. Hinckley* of counsel (*Allan J. Kirschner* with him on the brief; *Liebman, Eulau, Robinson & Perlman,* attorneys), for appellant.

*Leon P. Gold* of counsel (*Ralph L. Ellis* with him on the brief; *Shea Gallop Climenko & Gould,* attorneys), for respondent.

BASTOW, J. This appeal from an order denying plaintiff's motion for summary judgment presents anew the question as to whether parol evidence that defendant proposes to introduce upon a trial is consistent with and not contradictory of a written instrument for the purchase of merchandise or on the other hand is inadmissible because inconsistent with the writing, or if consistent therewith is such that if agreed upon would have been included in the document.

It appears that certain individuals — not parties to this action — proposed to form a corporation (Credelco) to operate a laundry and dry-cleaning plant. They negotiated with plaintiff for the purchase of the necessary equipment. The negotiations collapsed because of the lack of adequate financing. Thereafter, the Credelco group turned to defendant — a corporation apparently engaged in the long-term leasing of equipment and personal property.

On March 17, 1965 defendant issued to plaintiff an order. in writing signed by its comptroller for the purchase of certain described equipment with instructions to ship the same to

Credelco at a stated address in New Jersey. The writing discloses that the list price of the personalty was $31,140. Credited thereto were a discount ($1,557) and the sum of $3,115 representing the amount previously paid to plaintiff by the Credelco group.

The purchase order (on defendant's printed form) provided that "Seller agrees to furnish the above items in accordance with the conditions and terms " therein stated. These provided, among other things, that "Modifications hereof shall be made only in accordance with the written approval of both parties " and "No verbal modifications hereof shall be effective." A further condition was that "Discount and payment periods will start from the date of receipt of the material and/or equipment by the Buyer."

The substance of the proposed defense is that prior to issuance of the purchase order the parties orally agreed to the further condition that plaintiff would "supervise installation, fully check out all the equipment, provide operational training to the Credelco group and have [it] notify [defendant] that the [plant] was fully equipped, installed and operational " before defendant would be obligated to pay plaintiff.

In *Meadow Brook Nat. Bank* v. *Bzura* (20 A D 2d 287, 289) this court wrote that "While generally an integrated written agreement may be shown not to have taken effect because of an oral condition precedent, this being an exception to the parol evidence rule, the exception does not apply where the oral condition precedent would contradict the express terms of the writing." The opinion further quoted this language from *Hicks* v. *Bush* (10 N Y 2d 488, 491): "The applicable law is clear, the relevant principles settled. Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement (see *Saltzman* v. *Barson*, 239 N. Y. 332, 337; *Grannis* v. *Stevens*, 216 N. Y. 583, 587; *Reynolds* v. *Robinson*, 110 N. Y. 654; see, also 4 Williston, Contracts [3d ed., 1961], § 634, p. 1021; 3 Corbin, Contracts [1960 ed.], § 589, p. 530 *et seq.*), if the condition does not contradict the express terms of such written agreement. (See *Fadex Foreign Trading Corp.* v. *Crown Steel Corp.*, 297 N. Y. 903, affg. 272 App. Div. 273, 274–276; see, also, Restatement, Contracts, § 241.) A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement. (See, e.g., Illustration to Restate-

ment, Contracts, § 241.) Upon the present appeal, our problem is to determine whether there is such a contradiction."

This legal principle has been incorporated into the statute (Uniform Commercial Code, § 2–202) relating to the sale of goods. In *Hunt Foods & Ind.* v. *Doliner* (26 A D 2d 41, 43) this court stated with precision the applicable test: " In a sense any oral provision which would prevent the ripening of the obligations of a writing is inconsistent with the writing. But that obviously is not the sense in which the word is used (*Hicks* v. *Bush,* 10 N Y 2d 488, 491). To be inconsistent the term must contradict or negate a term of the writing. A term or condition which has a lesser effect is provable."

Judged by this test the proposed oral proof would contradict the provision of the writing that the discount and payment periods should start from the date of the receipt of the equipment by defendant. In so concluding attention should be directed to the further language of the purchase order (prepared by defendant) that no verbal modifications should be effective; that modifications should be made " only in accordance with the written approval of both parties " and that " Time of delivery is of the essence of this contract."

Moreover, " an inspection of this contract shows a full and complete agreement, setting forth in detail the obligations of each party. On reading it one would conclude that the reciprocal obligations of the parties were fully detailed." (*Mitchell* v. *Lath,* 247 N. Y. 377, 381–382.) If perchance, therefore, the oral proof could be found to be consistent with the terms of the instrument within the meaning of subdivision (b) of section 2–202 of Uniform Commercial Code it would be objectionable in the light of the official Comment of the drafters of the Code. They wrote that " If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact." (McKinney's Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, part 1, p. 158.)

It taxes credulity to believe that defendant having prepared the writing with considerable precision would not have included therein the all important provisions that plaintiff was to supervise installation of the equipment, provide for training of personnel and thereafter notify defendant that it had an operable plant. The incredibility of these assertions is demonstrated by proof supplied by defendant. The real reasons for noninstallation of the equipment were that construction of the building to be used had not been completed and the Credelco

group and the constructors of the building were "experiencing such financial difficulties as to render the completion of [the equipment installation] impossible at present."

There is no merit to defendant's contention that the writing is unenforcible because it was not signed by plaintiff. The statute requires only the signature of the party against whom enforcement is sought. (Uniform Commercial Code, § 2–201.) We have examined the other contentions advanced by respondent and find them to be without substance or merit.

The order denying plaintiff's motion for summary judgment should be reversed on the law and summary judgment granted to plaintiff with interest from March 17, 1965 with costs and disbursements.

McGIVERN, J. (dissenting). I dissent and would affirm Special Term in its conclusion that there is "at least arguably triable or debatable issue".

The test is not whether we think the plaintiff should or will ultimately recover, but whether the defendant has raised an issue. "Issue-finding, rather than issue determination, is the key to the procedure". (*Bakerian* v. *Horn,* 21 A D 2d 714 [3d Dept., 1964].) And herein defendant, by two sworn affidavits has asserted that prior to the purchase order of defendant, signed only by its comptroller, there was an oral understanding with plaintiff that Regis would assume the financing on behalf of Credelco; but first Whirlpool would supervise and check out the equipment and provide operational training to the Credelco group. Then, Regis would be liable. Although two representatives of Whirlpool were allegedly present at this conference, no one on behalf of plaintiff has interposed an affidavit denying the conference or the oral understanding. This alone is sufficient to bar summary judgment.

Credence is given to defendant's version of the actual agreement of the parties by the fact that in the purchase order of Regis is a credit item of $3,115, actually and previously paid by Credelco to Whirlpool before the entry of Regis into the discussions. This item in the Regis purchase order did not arise out of thin air. It could only have been the product of a meeting of the minds, orally expressed. Not to be overlooked is that Regis is in the business of financing enterprises and is not engaged in the business of installing laundry and dry-cleaning equipment.

Further, the oral understanding being a condition precedent, and not in any real sense contradictory of or inconsonant with the purchase order, is admissible. (*Hicks* v. *Bush,* 10 N Y 2d 488.)

Thus, I think Special Term acted prudently in denying the motion. "It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment. Whatever the final judgment may be the defendants were entitled to have the issue deliberately tried and their right to be heard in the usual manner of a trial protected." (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22, 38–39 [1923]; *Sillman* v. *Twentieth Century–Fox Film Corp.*, 3 N Y 2d 395, 404 [1957].)

The disposition of Special Term was not erroneous.

STEVENS, J. P., EAGER and TILZER, JJ., concur with BASTOW, J.; McGIVERN, J., dissents in opinion.

Order entered on May 17, 1967, reversed, on the law, with $50 costs and disbursements to the appellant, and plaintiff's motion for summary judgment granted, with $10 costs, with interest from March 17, 1965.