Argued April 5, affirmed December 19, 1978

# HATLEY, *Respondent,*
## *v.*
# STAFFORD, *Defendant,*
## and
# STAFFORD et al, *Appellants.*
## (No. 75-4433, SC 25168)

588 P2d 603

Donald A. Gallagher, Jr., Eugene, argued the cause for appellants. On the briefs were Roy E. Adkins, and Jaqua & Wheatley, P.C., Eugene.

Stuart M. Brown, of Young, Horn, Cass & Scott, Eugene, argued the cause and filed a brief for respondent.

HOWELL, J.

Lent, J., filed a dissenting opinion.

**HOWELL, J.** ·

Plaintiff, lessee, filed this action for trespass against defendants, lessors. The property involved is a 52-acre farm in Lane County. The defendants contended they were entitled under the lease agreement to terminate the lease and recover possession.

The following is the entire written agreement of the parties relating to the lease:

"Oct. 16, 1974

"Stafford Farm agrees to rent to Mike Hatley Rt. 1 Box 83, Halsey, Ore. approximately 52 acres till Sept. 1st 1975 for the purpose of growing wheat with the follow [sic] condition:—Stafford Farm shall have the right to buy out Mr. Mike Hatley at a figure of his cost per acre but not to exceed 70.00 per acre. This buy out is for the express purpose of developing a Mobile Home Park.

"Terms shall be $1800.00 paid on or before Jan. 20th 1975 balance due Sept. 20, 1975. The Rent figure shall be $50.00 per acre.

"Stafford Farm
"By /s/ Robert R. Stafford Mgr.   /s/ Mike Hatley"

Plaintiff Hatley alleged that between June 8 and June 11, 1975, defendants trespassed on the property by taking possession of the farm and cutting the immature wheat crop. The defendants alleged in their answer that they exercised their right to terminate the lease in order to build a mobile home park and that they offered to pay plaintiff his cost per acre but not to exceed $70 per acre. Plaintiff demanded $400 per acre, the fair market value of the wheat crop.

In plaintiff's reply, he alleged that the written agreement was not the entire integrated agreement of the parties, and that the parties orally agreed the buy out provision of the lease would apply only for a period of 30 to 60 days after the execution of the lease.

The trial court allowed plaintiff to introduce evidence concerning the alleged oral agreement limiting the time in which the buy out provision could be

exercised. The jury returned a verdict for plaintiff, and defendants appeal. The only error asserted on appeal is that the trial court erred in allowing admission of the parol evidence relating to the time limit on the buy out agreement.

The parol evidence rule[1] applies only to those aspects of a bargain that the parties intend to

---

[1] ORS 41.740 states, in pertinent part:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, * * *."

Concededly, a literal reading of this statute would exclude *any* parol evidence of the terms of an agreement once that agreement had been reduced to writing by the parties. This court, however, has never read the statute in such a manner, but instead has treated the statute as a codification of the common law parol evidence rule. *See, e.g., Blehm v. Ringering,* 260 Or 46, 488 P2d 798 (1971) ("* * * ORS 41.740 is the parol evidence rule"). Consequently, we have recognized the various common law "exceptions" to the parol evidence rule in applying the statute, even though such exceptions do not appear in the statute. *DeVore v. Weyerhaeuser Co.,* 265 Or 388, 508 P2d 220 (1973), *cert. denied* 415 US 913, 94 S Ct 1408, 39 L Ed 2d 467 (1974) (holding the rule inapplicable when the party objecting to the parol evidence admits the oral term was agreed to); *Stevens v. Good Samaritan Hosp.,* 264 Or 200, 504 P2d 749 (1972) (recognizing the "partial integration" exception to the rule); *National Cash Register Co. v. IMC, Inc.,* 260 Or 504, 491 P2d 211 (1971) (recognizing that the rule does not apply when the parties do not intend the writing to be a "final" statement of their agreement); *Sternes v. Tucker,* 239 Or 105, 395 P2d 881 (1964) (holding that the rule does not bar proof that the parties intended the writing to be subject to an oral condition).

Although these decisions may be inconsistent with a literal reading of the statute, which has been in effect since 1862, they can be justified under the general rule that statutes codifying the common law are to be construed in a manner consistent with the common law. *See* 2A Sutherland on Statutory Construction § 50.02 (Sands ed 1973). Without undertaking a comprehensive study of the application of the parol evidence rule at common law, it is sufficient to note for purposes of this opinion that at the time ORS 41.740's original predecessor was enacted (see General Laws of Oregon § 682 (1874)), the "partial integration" doctrine discussed herein was recognized by both courts and commentators. *See Batterman v. Pierce,* 3 Hill 171 (NY 1842) (note given for wood on plaintiff's land did not bar proof of oral agreement that plaintiff would bear risk of loss of fire); *Jefferey v. Walton,* 1 Starkie 267 (1816) (written contract to hire horse did not bar proof of oral agreement that hirer took risks of accidents from his shying); 1 G. Greenleaf, A Treatise of the Law of Evidence 331 (13th ed

memorialize in the writing. *Caldwell et ux v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961). The fact that a writing exists does not bring the rule into play if the parties do not intend the writing to embody their final agreement. *National Cash Register Co. v. IMC, Inc.,* 260 Or 504, 491 P2d 211 (1971); *Sternes v. Tucker,* 239 Or 105, 395 P2d 881 (1964); *Bouchet v. Oregon Motor Car Co.,* 78 Or 230, 152 P 888 (1915). Neither does the rule apply when the parties intended the writing to contain only part of their agreement. *Stevens v. Good Samaritan Hosp.,* 264 Or 200, 504 P2d 749 (1972); *Hirsch v. Salem Mills Co.,* 40 Or 601, 67 P 949, *reh. denied* 68 P 733 (1902); *Contract Co. v. Bridge Co.,* 29 Or 549, 46 P 138 (1896). *See also* 3A Corbin on Contracts § 581 (1960).

In the present case, plaintiff sought to show that the written lease was a "partial integration," *i.e.,* that the written contract included some, but not all, of the terms of the actual agreement. Defendants contend that such a showing could be made only if the oral agreement was "not inconsistent" with the writing and was "an agreement as might naturally be made as a separate agreement * * *." *Caldwell et ux v. Wells,* supra at 395. Plaintiff argues that these limitations apply only after it has been demonstrated that the writing is a complete integration, that whether a writing was intended to be a complete integration is a question of fact, and that the jury may consider any relevant evidence in deciding this question of fact. Both parties find support for their positions in past opinions by this court. *Compare Stevens v. Good Samaritan Hosp.,* supra, and *Land Reclamation v. Riverside Corp.,* 261 Or 180, 492 P2d 263 (1972) (both

1876); T. Starkie, A Practical Treatise on the Law of Evidence 724 (10th ed 1876).

We note also that the Supreme Court of California, which operates under a statute identical to ORS 41.740, treats its statute as a codification of the common law and has recognized the partial integration doctrine as well. Cal Code Civ Pro § 1856 (West 1955); *Masterson v. Sine,* 68 Cal 2d 222, 65 Cal Rptr 545, 436 P2d 561 (1968).

supporting plaintiff's position) with *Caldwell et ux v. Wells,* supra, and *DeVore v. Weyerhaeuser Co.,* 265 Or 388, 508 P2d 220 (1973), *cert. denied* 415 US 913, 94 S Ct 1408, 39 LEd 2d 467 (1974) (both supporting defendants' position). A brief review of these cases will illustrate the difficulty of the problem.

In *Caldwell,* defendant agreed to sell plaintiff a house and a lot and also promised that a well would be drilled on the lot. The parties executed a one-page "Earnest Money Receipt" that made no mention of the promise to drill the well. This court held that the parol evidence rule applied only to those aspects of the bargain that the parties intended to memorialize in the writing, and that whether or not the "Earnest Money Receipt" was intended to embody the entire agreement was a question of fact. Having done this, we then adopted the Restatement of Contracts position, which states:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract." 1 Restatement of Contracts 335, § 240 (1932).

Because the promise to have the well drilled might naturally be made as an agreement separate from the promise to convey the land, we held that parol evidence was admissible to prove the former promise.

In *Stevens v. Good Samaritan Hosp.,* supra, defendant contended that evidence of an oral agreement should have been excluded under the parol evidence rule. We said:

"The complaint alleged that certain terms of the employment contract were memorialized in a collective bargaining agreement, but other terms were orally

[ 528 ]

agreed upon between the parties to this proceeding. This is an allegation of an unintegrated agreement; therefore, the parol evidence rule does not apply." 264 Or at 202.

No mention was made of the Restatement test.

*Land Reclamation v. Riverside Corporation,* supra, involved a deed purporting to transfer real property without restriction and a prior land sale contract restricting the property to use as a sanitary landfill. We held that the land sale contract was an agreement that might naturally be made separately from the deed, and that parol evidence was therefore admissible to prove the restriction. In dicta, however, we stated that "§ 240 [of the Restatement] assumes that the adoption of the writing has been proved. * * * [I]f the previous agreement is not of the type which might naturally be made as a separate agreement, it will nevertheless control if it is shown that the parties intended that agreement, rather than the subsequent writing should control." 261 Or at 183, n. 4.

The dicta in *Land Reclamation* subsequently was contradicted by dicta in *De Vore v. Weyerhaeuser Co.,* supra, although *De Vore* did not cite *Land Reclamation* by name. *De Vore* involved an industry-wide collective bargaining agreement that defendant employer sought to show was inapplicable to plaintiff employees. The employer alleged an oral agreement to exclude the employees from certain provisions of the collective bargaining agreement and the employees claimed that proof of the oral agreement was barred by the parol evidence rule. We stated the general rule that, "Whether the parties intended to integrate their agreement in the writing is a question of fact in each case," but then went on to note:

"If this were the correct rule, without any further limitations, evidence could always be offered of any prior or contemporaneous oral agreement and in all cases the question whether the parties intended to supersede such an oral agreement by the integration of their entire agreement into the terms of the written contract would

[ 529 ]

be a question of fact which must always be submitted to the trier of the facts, whether court or jury. It may be said, however, with some justification, that the adoption of such a rule, without any limitations, would emasculate, if not 'repeal,' the parol evidence rule, which is a rule adopted by statute in Oregon, as in many other states." 265 Or at 400-01 (footnote omitted).

We then stated that the Restatement criteria imposed "limitations" on the evidence that can be considered in determining the intent of the parties. Nevertheless, we held the parol evidence admissible because representatives of the employees had admitted that the writing was not intended to be a complete integration.

■ The inconsistency in our prior decisions reflects a long-standing disagreement among courts and commentators generally as to the applicability of the parol evidence rule. Before examining the merits of the conflicting views, it is useful to consider the background and theory of the rule. The rule apparently was an outgrowth of the law governing contracts under seal. Because the King's word was indisputable, the King's seal on a document made the document uncontestable. 9 J. Wigmore, Evidence 83, § 2426 (3d ed 1940). The status of writings was further enhanced by the enactment of the Statute of Wills and the Statute of Frauds, both of which made certain transactions legally unenforceable unless they were in writing. This theory was gradually applied to contracts generally, until finally the writing came to be regarded as the agreement itself, rather than merely as evidence of the agreement. *Id.* at 91.

Modernly, the parol evidence rule has often been justified on grounds of commercial certainty. If parol evidence were allowed to be offered in contradiction of writings, it has been feared that the likelihood of perjury would increase. Calamari & Perillo, The Law of Contracts 109 (2d ed 1977). It is also believed that the rule is needed to ensure that juries will not decide cases on the "equities," the theory being that the

economic underdog will most often be the party seeking to vary the terms of the writing by parol evidence. McCormick, *The Parol Evidence Rule as a Procedural Device for Control of the Jury,* 41 Yale L J 365 (1932).

On the other hand, it has been observed that in a modern society where much of business is transacted over the telephone, contracts that are partly oral and partly written have become increasingly common. Note, *The Parol Evidence Rule: Is It Necessary?,* 44 NYU L Rev 972, 983 (1969). Moreover, in an era of adhesion contracts and unequal bargaining power, the extent to which many writings actually embody the agreement of the parties is debatable. Sweet, *Contract Making and Parol Evidence: Diagnosis and Treatment of a Sick Rule,* 53 Cornell L Rev 1036, 1056 (1968). Finally, it is doubtful that the rule discourages perjury, since the rule can be avoided by fabricating an oral agreement subsequent to the execution of the writing. *Cf., Allen v. Allen,* 275 Or 471, 551 P2d 459 (1976).

The rule does, however, serve an important function. If the parties *in fact* have assented to the writing as the embodiment of their entire agreement, each should be able to rely on the terms of the writing as conclusive evidence of what they have agreed to. As Professor Corbin observes:

> "No contract whether oral or written can be varied, contradicted or discharged by an antecedent agreement. Today may control the effect of what happened yesterday; but what happened yesterday cannot change the effect of what happens today." 3A Corbin on Contracts 371-72, § 574 (1960); *see also* Farnsworth, *"Meaning" in the Law of Contracts,* 76 Yale L J 939 (1967).

■ The difficulty arises when one of the parties asserts, as does the plaintiff in the present case, that the writing does not contain all the terms of the actual agreement. Because the parol evidence rule applies only to complete and final integrations, and because the existence of an integration depends on the intent of the parties, it has been argued that any relevant

evidence of the parties' intent should be admissible and that the actual intent of the parties should be a factual question for the jury. As we observed in *DeVore v. Weyerhaeuser Co.,* supra, however, a rule allowing the jury to consider any relevant evidence in deciding whether the writing was intended to be a complete integration "without any limitations, would emasculate, if not 'repeal,' the parol evidence rule, which is a rule adopted by statute in Oregon * * *." 265 Or at 401. Consequently, we have recognized the criteria of § 240 of the Restatement of Contracts as imposing limitations on the admissibility of evidence in cases involving the partial integration doctrine. We believe these limitations remain appropriate, despite our occasional statements to the contrary.

■ On the other hand, the Restatement criteria are not to be applied mechanically or formalistically. As noted above, the purpose of the parol evidence rule is to give special effect to writings only in those cases where the parties intended the writing to be a final and complete statement of their agreement. Insofar as possible, the Restatement criteria should be applied in a manner consistent with that purpose.

■ Before applying these principles to the facts of the present case, mention should be made of the functions of court and jury in cases involving the parol evidence rule. Both plaintiff and defendants appear to have assumed that the jury decides whether or not the parties intended their writing to be a final and complete integration. Such is not the law. As McCormick notes, "The question [of whether the parties intended the writing to be a complete integration] is one for the court, for it relates to the admission or rejection of evidence." McCormick, Handbook of the Law of Evidence 437, § 215 (1954), *quoting Naumberg v. Young,* 44 NJL 331, 338 (1882). In deciding that the parties did not intend the writing to be an integration, however, the court does not decide that the alleged oral terms actually were agreed upon. That determination

[ 532 ]

is left to the jury. The court's decision is one of admissibility, not probity.[2]

In the present case, the trial court decided that the written agreement of the parties was not a complete integration of their actual agreement, and permitted plaintiff to introduce evidence that the buy out provision in the written lease was subject to an oral time limitation. No contention is made that the oral agreement was supported by separate consideration, so the trial court's ruling can be upheld only if the agreement: (1) was "not inconsistent" with the written lease and (2) was "such an agreement as might naturally be made as a separate agreement *by parties situated as were parties to the written contract.*" *DeVore v. Weyerhaeuser Co.,* supra; *Caldwell et ux v. Wells,* supra (emphasis added).

■ Defendant argues that the oral time limitation is "clearly inconsistent" with the terms of the written lease, reasoning that a buy out provision with no time limitation on a lease for a fixed term must be read to run for the entire term of the lease. We do not define the term "inconsistent" so broadly. To be "inconsistent" within the meaning of the partial integration doctrine, the oral term must contradict an *express provision* in the writing. As the court observed in *Hunt Foods and Industries, Inc. v. Doliner,* 26 App Div 2d 41, 270 NYS2d 937 (1966):

---

[2]Wigmore explains the procedure thusly:

"* * * There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con,* concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place." 9 J. Wigmore, Evidence 98, § 2430 (3d ed 1940) (footnotes omitted).

"In a sense any oral provision which would prevent the ripening of the obligations of a writing is inconsistent with the writing. But that obviously is not the sense in which the word is used * * *. To be inconsistent the term must contradict or negate *a term of the writing.* A term or condition which has a lesser effect is provable." 270 NYS2d at 940 (emphasis added).

*See also, Braund, Inc. v. White,* 486 P2d 50 (Alaska 1971), and *Whirlpool Corp. v. Regis Leasing Corp.,* 29 App Div 2d 395, 288 NYS2d 337, 340 (1968), both following the *Hunt* court's definition of "inconsistent."

In the instant case, nothing is contained in the writing with respect to the duration of the buy out provision. Therefore, the oral time limitation is "not inconsistent" with the terms of the writing.

Defendants argue that even if the oral term is not inconsistent with the terms of the writing, the parol evidence should have been excluded because the oral term "naturally" would have been included in the writing. We disagree.

■ In determining whether or not an oral term is one that "naturally" would have been included in the writing, the trial court is not limited to a consideration of the face of the document. This court has recognized that "* * * the surrounding circumstances, as well as the written contract, may be considered." *Blehm v. Ringering,* 260 Or 46, 50, 488 P2d 798 (1971). When considering the surrounding circumstances, the trial court should be aware of the fact that parties with business experience are more likely to reduce their entire agreement to writing than parties without such experience, *TSS Sportswear, Ltd. v. Swank Shop, Inc.,* 380 F2d 512 (9th Cir 1967), and that this is especially true when the parties are represented by counsel on both sides. *Scott-Douglas Corp. v. Greyhound Corp.,* 304 A2d 309 (Del Super 1973). The relative bargaining strength of the parties also should be considered, since a transaction not negotiated at arm's length may result in a writing that omits essential terms. *Cf.,*

*Bussard v. College of Saint Thomas, Inc.,* 294 Minn 215, 200 NW2d 155 (1972). And, of course, the apparent completeness and detail of the writing itself may lead the court to conclude the parties intended the writing to be a complete integration of their agreement. *Unique Watch Crystal Co. v. Kotler,* 344 Ill App 54, 99 NE2d 728 (1951). *See also,* Sweet, supra at 1064-67.

This is not to say, however, that the trial court should readily admit parol evidence whenever one of the parties claims a writing does not include all the terms of an agreement. The court should presume that the writing was intended to be a complete integration, at least when the writing is complete on its face, and should admit evidence of consistent additional terms only if there is substantial evidence that the parties did not intend the writing to embody the entire agreement. Hale, *The Parol Evidence Rule,* 4 Or L Rev 91 (1925).

In the present case, there are a number of facts that could have led the trial court to conclude that it was natural for the parties "situated as were parties to the written contract" to have omitted the time limitation on the buy out provision from the written lease. First, this was not a sophisticated business transaction in which the parties could be expected to include all the terms of their agreement in the writing. *Cf., Deering v. Alexander,* 281 Or 607, 576 P2d 8 (1978). The lease agreement was a handwritten document that hardly shows the kind of careful preparation that accompanies a formal integration. *See* Calamari and Perillo, The Law of Contracts 102 (2d ed 1977). Moreover, the agreement was concluded by the parties themselves, without counsel to advise them of the consequences of the writing. This case is therefore analogous to the leading case of *Masterson v. Sine,* 68 Cal2d 222, 65 Cal Rptr 545, 436 P2d 561 (1968), where the court, per Chief Justice Traynor, stated:

[ 535 ]

"* * * There is nothing in the record to indicate that the parties to this family transaction, through experience in land transactions or otherwise, had any warning of the disadvantages of failing to put the whole agreement in the deed. This case is one, therefore, in which it can be said that a collateral agreement such as that alleged 'might naturally be made as a separate agreement.'" 436 P2d at 565.

Finally, the trial court was entitled to consider the fact that a literal reading of the written contract would have led to an unreasonable result. Plaintiff was contending the wheat crop he had planted would be worth $400 per acre at harvest. The written agreement, standing alone, would have allowed the defendants to exercise the buy out provision the day before harvest and pay plaintiff $70 per acre for wheat worth $400 per acre. While the mere fact that a contract is one-sided does not by itself justify a conclusion that the writing does not embody the entire agreement of the parties, the trial court may consider that fact in deciding whether the parties intended additional provisions to be included in the agreement. *TSS Sportswear, Ltd. v. Swank Shop, Inc.,* supra at 519.

For these reasons, we hold that there was sufficient evidence to justify the trial court's decision to admit the parol evidence. The trial court was entitled to consider "the surrounding circumstances, as well as the written contract * * *." *Blehm v. Ringering,* supra. Under the circumstances of the present case, the parol evidence was properly admitted, and the question of whether the parties actually agreed to the time limitation was properly left to the jury.

Affirmed.

**LENT, J.,** dissenting.

I must respectfully dissent. The majority opinion and the result thereby achieved in this case make the statute meaningless. The statute is clear:

[ 536 ]

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, * * *." ORS 41.740

It excludes any evidence of the terms of an agreement reduced to writing other than the agreement itself. The statute would have to read differently to permit legislatively what this court permits by "interpreting" or "construing" the statute. The effect of this court's decisions has been to revise the statutory language to provide somewhat as follows:

"When the terms of an agreement have been reduced to writing by the parties, it is not to be considered as containing all those terms if there is oral testimony or evidence other than the contents of the writing that the agreement is incomplete."

If that is what the legislature meant to say, it is surprising that they chose the language now found in ORS 41.740 (which is unchanged from Sec. 682 of the Act of October 11, 1862).

The majority says that the statute is a codification of the parol evidence rule known to the common law, and therefore, the exceptions to the common law rule are an existing but unwritten list of exceptions to the statute. Not only that, but the majority seems to say further that whenever a common law court constructs another exception, this court may, if it finds the exception seemly, adopt it as an implied amendment to the 1862 Act. Would the majority apply the statute as written if the next legislative assembly were to reenact the Act of October 11, 1862, and add: "And this time we mean it"?

Were the statute applied as written, those who take the trouble to reduce their agreement to writing should be reasonably certain as to their rights and obligations. Trials would be simpler and cheaper. If it

be said that the statute is harsh, I know of no better way to demonstrate its harshness or unfairness than to apply it strictly. The legislature could then actually enact a statute which would read as the majority's version of the present statute.

As to the case at bar the majority says that what the plaintiff contends was an unwritten part and parcel of the written agreement is not "inconsistent" with the part actually written. This will surely surprise the defendant who finds that by the opinion in this case "not to exceed 70 [dollars] per acre" is consistent with $400 per acre. Although he had no lawyer to advise him at the time of making his writing, this plaintiff farmer cannot be so lacking in sophistication as to know or realize that it's just as easy to write "400.00" as it is to write "70.00" if that is truly what the parties intended and agreed.

The majority says generally:

> "This is not to say, however, that the trial court should readily admit parol evidence whenever one of the parties claims a writing does not include all the terms of an agreement. The court should presume that the writing was intended to be a complete integration, at least when the writing is complete on its face, and should admit evidence of consistent additional terms only if there is substantial evidence that the parties did not intend the writing to embody the entire agreement."

Whatever the majority may mean by "substantial evidence" the rule just set forth should defeat this plaintiff's claim, not vindicate it. The writing is complete on its face, the additional terms are not consistent, and the "substantial evidence" is the plaintiff's testimony.

I respectfully dissent.