Argued September 15, 1971, affirmed January 5, petition for rehearing denied February 1, 1972

## LAND RECLAMATION, INC., *Appellant, v.* RIVERSIDE CORPORATION, *Respondent.*

492 P2d 263

*Donald C. Walker,* Portland, argued the cause for appellant. With him on the brief was Ronald A. Watson, Portland.

*George M. Joseph,* Portland, argued the cause for respondent. On the brief were McColloch, Dezendorf, Spears & Lubersky, and James C. Dezendorf and James H. Clarke, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is a proceeding for a declaratory judgment to adjudicate plaintiff's interest in certain real property conveyed to it by defendant. Plaintiff appeals from a judgment in favor of defendant.

On May 4, 1970, defendant executed and delivered to plaintiff a warranty deed which contained no conditions or restrictions. Prior to the execution of the deed, plaintiff and defendant had entered into a written contract dated April 30, 1970 in which defendant agreed to sell and convey the property in question to plaintiff at a price of $7,300.00. The contract provided that the property "shall be used by the Buyer for a sanitary land fill or modified land fill operation permitting disposal of large bulky items under permit from Multnomah County and/or other governmental agencies." The contract provided that on or before ten years from the date of the contract, or earlier if plaintiff completed its sanitary land fill operation, plaintiff would reconvey the property to defendant by warranty deed at a price of $7,300.00. The property was to revert to defendant without payment if plaintiff's land fill permit issued by a governmental agency was suspended or revoked for unsatisfactory performance. There were other provisions in the contract designed to define the rights of the parties in relation to the use of the property for sanitary land fill purposes.

Plaintiff contends that it has the right to use the property for any purpose it sees fit, including the removal of gravel. This contention is based upon the theory that the deed merges the contract and therefore precludes defendant from relying upon the terms of the contract restricting the use of the property. The assertion that a deed merges an antecedent agreement is but another way of stating that parol and other extrinsic evidence is not admissible to vary an unambiguous writing.[1]

---

[1] Cf., 1 Restatement, Contracts § 240(1)(b) (1932) and 2 Restatement, Contracts § 413 (1932) and comments thereto; 2

■ As we have observed in previous cases, the parol evidence rule is a rule of integration; "The rule closes the door to proof only as to those aspects of the bargain which the parties intended to memorialize in the writing," and "[w]hether the parties intended to integrate their agreement in the writing is a question of fact in each case."[1]

In *Caldwell et ux v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961) we went on to say that the rule is correctly stated in 1 Restatement of Contracts § 240 (1932), which provides among other things that a written agreement is not superseded by a subsequent integration "if the agreement is not inconsistent with the integrated contract, and (a) is made for separate consideration, or (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."[2] In the case at bar all of the elements recited in § 240 are satisfied.[3]

Devlin on Real Estate, Law of Deeds, § 850(a) at 1570 (3d ed 1911); 3 Corbin on Contracts, § 574, 1971 pocket part at 208, § 577 at 393 (1960).

[1] Caldwell et ux v. Wells, 228 Or 389, 395, 365 P2d 505, 508 (1961); Smith v. Harris, 92 Or Adv Sh 1071, 1074, 484 P2d 1100 (1971); Blehm v. Ringering, 93 Or Adv Sh 497, 500, 488 P2d 798 (1971).

[2] Caldwell et ux v. Wells, *supra* at 395, 365 P2d at 508 (1961).

[3] It is to be observed that § 240 assumes that the adoption of the writing as an integration has been proved. See 3 Corbin on Contracts, § 581, p. 443 (1960). If a term in a writing is inconsistent with a previous agreement but it is proved that the parties did not intend to integrate the agreement in the writing, the previous agreement would control. Similarly, if the previous agreement is not of the type which might naturally be made as a separate agreement, it will nevertheless control if it is shown that the parties intended that agreement rather than the subsequent writing should control. See 3 Corbin, *supra,* ch. 26 at 368-370, 386-400, 441-480, 501-530 and 1971 pocket part at 208.

■ In the present case the evidence definitely establishes that the parties did not intend the deed to memorialize their agreement as to the use of the land. The written contract of April 30, 1970 makes it clear that the deed was simply to serve as the vehicle for passing title to plaintiff for the purpose of using the land for a sanitary land fill operation. The contract expressly provides for the conveyance of the land, specifies the use to which the land would be put, and sets out in detail the circumstances under which the title would revest in the grantor.

■ There is no rule of law which precludes the parties from using two written instruments rather than one to effectually carry out their agreement. It is true that the arrangement worked out by the parties could have been effectuated as well by a lease embodied in a single instrument, but there is no legal requirement that the transaction take that form and it is quite possible that the transfer of the fee for a limited use rather than a lease was necessary to serve the grantor's or grantee's purpose.

■ Plaintiff argues that even if the contract and deed are read together, the provision that "the property shall be used by the Buyer for a sanitary land fill" does not have a limiting or restrictive meaning that the land cannot be used for other compatible purposes. On this basis plaintiff asserts the right to remove gravel from the land in question.

If we had the limiting clause and nothing more, plaintiff's contention would have some force.[9] But

---

[9] See for example, Greenfeld v. Supervisors' Dist. No. 3 of Perry County, 205 F2d 323, 324 (5th Cir 1953); General Teleradio v. Mount Washington Summit House, 116 F Supp 698, 699-700 (Dist. N.H. 1953); Chandler v. Hart, 161 Cal 405, 119 P 516, 519, 520, Ann Cas 1913B 1094 (1911); Bovin v. Galitzka, 131 Misc

taking the agreement as a whole, it appears that the limitation was intended to restrict the grantee to the single use specified in the limitation. The contract contemplated a use for a limited time, it being agreed that the grantor could repurchase at the end of ten years or prior thereto if the land fill operation was completed or was terminated. This would indicate that the grantor intended to preserve its rights to use the land at the end of that time for other purposes.

This is unlike those cases in which property is leased for a specified use and it is held that other uses may be made of the property.[©] In such cases a change in use does not subject the property to a completely new kind of burden. If, however, the use other than that specified in the lease would have the effect of burdening the land not simply with an additional use but also with a diminution of the value of the land by removing a part of its substance, the additional use would not be permitted. The same principle should apply by analogy where, as in the present case, there is a grant for a specified purpose and the grantor resumes the right to repurchase after a specified period of time.

We hold, therefore, that plaintiff's use of the property is restricted to a sanitary land fill or modified land fill operation as specified in the contract.

Judgment affirmed.

McALLISTER and TONGUE, JJ., concur in the result.

479, 226 NYS 361, 363-364 (1927); Kaiser v. Zeigler, 115 Misc 281, 187 NYS 638, 639, 640 (1921).

[©] See for example, Eggen et ux v. Wetterborg et al, 193 Or 145, 237 P2d 970 (1951); Security Trust & Savings Bank v. Claussen, 44 Cal App 735, 187 P 140 (1919); Chamberlain v. Brown, 141 Iowa 540, 120 NW 334, 337 (1909); Otting v. Gradsky, 294 Ky 779, 172 SW2d 554, 556, 148 ALR 580 (1943).