**SACRAMENTO BASEBALL CLUB, INC., Plaintiff and Appellant,**

v.

**The GREAT NORTHERN BASEBALL COMPANY, a corporation, Dale D. Bain, aka Dale R. Bain, and Dennis R. Job, Defendants and Respondents.**

**Dale D. BAIN, Third–Party Plaintiff,**

v.

**Carmin CAPOZZOLI and Bernadine Capozzoli, individuals, Third-Party Defendants.**

No. 19736.

Supreme Court of Utah.

Dec. 29, 1987.

---

Steven H. Gunn, Salt Lake City, for Sacramento Baseball Club, Inc.

William T. Thurman, Salt Lake City, for Great Northern Baseball Co.

Dean R. Mitchell, Salt Lake City, for Bain.

John J. Borsos and Dennis F. Olsen, Salt Lake City, for Job.

George M. Haley, Salt Lake City, for Capozzoli.

DURHAM, Justice:

Plaintiff sued the guarantors of a contract for delinquent sums owed under the contract. The trial court held that the two documents used by the parties were two contracts and that the second lacked sufficient consideration and therefore could not be enforced. We reverse.

The parties submitted the case to the trial court on stipulated facts. Defendant Great Northern Baseball Company (Great Northern) agreed to buy a baseball franchise from plaintiff Sacramento Baseball Club, Inc. (Sacramento Baseball). Defendants Bain and Job acted as guarantors of the transaction. Subsequent to the time Sacramento Baseball filed this action, third-party defendants Carmin and Bernadine Capozzoli purchased Bain's interest in Great Northern and agreed to assume all of Bain's liabilities arising out of his association with Great Northern.

The parties used two documents for the transaction: an agreement for the sale of the franchise (sales agreement) and a consultation agreement (consultation agreement). The stipulation states that the parties used two documents in order to allow Great Northern to deduct the cost of the consultation services from its taxes. The sales agreement recited a price of $100,000 for the purchase of the franchise. The consultation agreement provided for payment of $88,000 to Sacramento Baseball in consideration for the consultation services of Robert Piccinini, Sacramento Baseball's president, and for Sacramento Baseball's agreement not to provide services "with respect to the operation and management of a professional baseball team" to anyone else. An amendment to the consultation agreement permitted Piccinini and Sacramento Baseball to make the final determination of where and how the consultation services would be performed and the nature and extent of the services. Great Northern never requested any consultation services.

Sacramento Baseball filed this action on November 20, 1979, after Great Northern failed to make a $99,000 payment on January 1, 1979, and a $22,000 payment on November 15, 1979. The trial court ruled in favor of Sacramento Baseball on the debt owed pursuant to the sales agreement, but found that the consultation agreement was not supported by sufficient consideration. Sacramento Baseball appeals the denial of an award for the debt based on the consultation agreement.

Sacramento Baseball argues that although two written documents exist, the parties actually intended a single contract. The trial court, however, found that the parties entered into two contracts even though they had originally intended only one. To reach this conclusion, the trial judge had to find that the parties ultimately intended two contracts.

Intent of the parties to a contract is a question of fact, and normally we will not overturn a trial court's findings of fact

unless they are "clearly erroneous." Utah R.Civ.P. 52(a). In this case, however, the trial court relied on the stipulated version of facts submitted by the parties in making its findings. When a trial court relies on stipulated facts to decide a case, this Court does not apply the clearly erroneous standard, but will sustain the lower court's decision only if convinced of its correctness. *Prince v. W. Empire Life Ins. Co.,* 19 Utah 2d 174, 177, 428 P.2d 163, 165 (1967). Thus, we examine the facts de novo.

 Examining the parties' written agreements and the circumstances surrounding the drafting of those agreements leads us to conclude that the parties intended one contract. An agreement may be a single contract even though it consists of several writings that the parties have never physically attached to each other. "[N]o rule of law ... precludes the parties from using two written instruments rather than one to effectually carry out their agreement." *Land Reclamation, Inc. v. Riverside Corp.,* 261 Or. 180, 184, 492 P.2d 263, 265 (1972). If the parties intended to create one contract, the number of documents that memorialize the agreement is irrelevant. *See* 17 Am.Jur.2d *Contracts* § 266, at 672 (1964). The two agreements herein were executed with the purpose of "effecting the sale of a certain Pacific Coast League baseball franchise." Two different documents were utilized solely for the purpose of providing tax benefits to Great Northern. Thus, the parties reached only one agreement and formed only one contract that was reflected in two separate documents.

Because the separate documents represent one contract, we do not consider Sacramento Baseball's claims regarding the sufficiency of the consideration supporting the consultation agreement. Instead, we hold that the contract, as a whole, is enforceable. Therefore, the consultation agreement, as part of the contract, is also enforceable.

We reverse both the trial court's ruling concerning the enforceability of the consultation agreement and its finding that the parties intended two contracts, and we award attorney fees to Sacramento Baseball pursuant to provisions in the contract. We remand to the trial court for a determination of reasonable attorney fees.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.