Argued and submitted May 16, reversed and remanded October 1, 1997

Rachel GULLETT,
*Appellant,*

*v.*

FRED MEYER, INC.,
a Delaware corporation,
Fourth Avenue Corp.,
an Oregon corporation,
and REC Resolution Company,
an Oregon corporation,
*Defendants,*

*and*

PORTLAND DRIVEWAY CO., INC.,
an Oregon corporation,
*Respondent.*

FRED MEYER, INC.,
a Delaware corporation,
Fourth Avenue Corp.,
an Oregon corporation,
and REC Resolution Company,
an Oregon corporation,
*Appellants,*

*v.*

PORTLAND DRIVEWAY CO., INC.,
an Oregon corporation,
*Respondent.*

(9411-07615; CA A90713)

946 P2d 311

Kevin Keaney argued the cause for appellant Rachel Gullett. With him on the briefs was Pozzi Wilson Atchison.

O.R. Skopil, III, argued the cause for appellants Fred Meyer, Inc., Fourth Avenue Corp., REC Resolution Company. On the opening brief were Michael T. Stone and Moscato, Skopil & Hallock.

Janet M. Schroer argued the cause for respondent. With her on the brief were Ruth Casby Rocker and Hoffman, Hart & Wagner.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff was injured when she fell in a parking lot at the Fred Meyer store in Raleigh Hills. She seeks damages from both Fred Meyer and related companies (Fred Meyer) and Portland Driveway Co. (Driveway), which had repaired the area of the parking lot where she fell. Fred Meyer cross-claimed against Driveway for indemnity and contribution. The trial court granted Driveway's motions for summary judgment on all claims against it and entered a judgment under ORCP 67 B in its favor. Plaintiff and Fred Meyer appeal, and we reverse.

We read the record, including all reasonable inferences that can be drawn from it, in the light most favorable to plaintiff and Fred Meyer, the nonmoving parties, and review the evidence to determine whether an objectively reasonable juror could return a verdict in favor of either of them on the subject of the motion. ORCP 47 C; *see Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997); *Wallulis v. Dymowski*, 323 Or 337, 340, 918 P2d 755 (1996). Plaintiff's injury occurred on January 1, 1993. It had snowed the night before, and the streets were slushy. There was enough ice on the pavement of the Fred Meyer parking lot to obscure the lines designating the parking spaces. Because of the ice, plaintiff was especially cautious as she walked from her car to the store entrance. Despite her precautions, as she approached the door she fell, breaking her left wrist in an effort to stop her fall. After the fall, plaintiff came to rest sitting directly on top of a grate over a catch basin that was designed to gather water that ran off the pavement. Her clothes were soaking.

Driveway, in response to Fred Meyer's request, had removed and replaced the catch basin in 1991. As part of that work, it replaced the grate through which the water runs into the basin and repaved the area of the parking lot around the grate. That pavement sloped down to the grate to direct water from the parking lot into the catch basin. When Driveway repaved the area around the catch basin, it did not alter the previous slope, nor did it tell anyone at Fred Meyer that the slope was dangerously steep. Plaintiff made an offer of

proof that her expert would testify that the slope of the pavement was excessive, that it violated reasonable industry practices, and that it could be corrected. The expert would also testify that it is the obligation of a paving contractor when performing repair work to bring such unsafe conditions to the client's attention.[1]

■ Neither plaintiff nor her husband, who was with her when she fell, expressly testified that the slope caused the fall. However, plaintiff believes that it did because her husband told her that she fell on the grate,[2] while her husband testified that she was sitting directly on the grate after she fell and that the slope into the grate had ice on it. Driveway argues that that evidence is insufficient to show that the slope of the pavement caused plaintiff's fall and, thus, that there is insufficient evidence that any negligence with regard to the slope caused her injuries.[3] We consider that issue first because an absence of evidence of causation would in itself support the summary judgments in Driveway's favor.

■ Read most favorably to plaintiff, the evidence is that the parking lot was icy, that because of the ice plaintiff took extra care to avoid falling, that despite that care she fell, that the slope of the pavement to the grate was dangerously steep, and that after her fall plaintiff was directly on top of the grate and her clothes were soaked. A jury could find from those facts that plaintiff fell because she slipped on the ice. It could also find that it was the unusual slope of the icy pavement around the catch basin, possibly made more dangerous

---

[1] Plaintiff submitted the testimony of her expert by an affidavit under ORCP 47 E in which her attorney described the exact testimony that the expert would give. Such detail is helpful to us in determining the role of the expert's testimony in the overall factual situation. *Cf. Stotler v. MTD Products, Inc.*, 149 Or App 405, 943 P2d 220 (1997) (discussing minimum requirements for an affidavit under ORCP 47 E).

[2] Driveway argues on appeal that that testimony is hearsay. However, it did not object to the testimony in the trial court, and we will therefore consider it. *See Knez Building Materials Co. v. Manikas*, 113 Or App 220, 222 n 2, 831 P2d 80 (1992).

[3] Plaintiff's specifications of negligence relate to both the location of the catch basin and the slope of the surrounding pavement. Driveway correctly points out that both plaintiff and Fred Meyer limit their arguments concerning Driveway to the issue of the slope rather than the location of the basin.

because of water running down that slope to the basin (which could explain plaintiff's soaked clothes), that caused plaintiff to fall. An icy surface is slippery in itself, and a person may fall on ice no matter how much care the person takes. However, an unexpected steep, slippery slope may well be the crucial factor in overcoming otherwise adequate precautions. That conclusion is not the only possible explanation for plaintiff's fall, but it is one that the evidence supports and that a reasonable jury could accept.

Driveway next argues that, when it repaired the catch basin, it simply reestablished the preexisting slope. It did not create or alter the slope and, thus, is not responsible for any consequences of that slope. However, Driveway did not correct any problem with the slope or bring the issue to Fred Meyer's attention. Plaintiff's expert will testify both that the slope was correctable and that it is the contractor's obligation to warn the client of such unsafe conditions. In addition, the Driveway employee in charge of the work testified that he would bring any safety concerns to the attention of the store director. That evidence in itself is sufficient for a jury to hold Driveway responsible for any dangerously excessive slope.

Driveway also argues that Fred Meyer hired it to perform a narrow task—replacing the catch basin and spot repairing the surrounding pavement—and that its liability is limited to the proper performance of that task. However, the jury could find, both from testimony of a Driveway employee and from plaintiff's expert, that Driveway's responsibilities included identifying and notifying Fred Meyer about any unsafe conditions.[4] It could also find that, by repairing the pavement without modifying the slope or notifying Fred Meyer of the danger,[5] Driveway made itself responsible for a dangerous condition and that it was foreseeable that that condition would lead to injury to a Fred Meyer customer.

---

[4] We reach this conclusion without considering deposition excerpts that Fred Meyer did not submit to the trial court.

[5] We do not need to consider Fred Meyer's argument that the jury could find that Driveway steepened the slope when it made the repair.

That is sufficient to support a verdict for plaintiff. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987);[6] *see also Strandholm v. General Const. Co.*, 235 Or 145, 157-58, 382 P2d 843 (1963) (contractor is liable to injured person for negligence in construction or repair without regard to privity of contract).

■ We turn to Fred Meyer's claims for contribution and indemnity. Driveway again asserts that it cannot be liable on those claims because its contract with Fred Meyer limited the scope of its obligations to removing and replacing the catch basin and that it had no duty to assess or alter the slope of the surrounding area. It recognizes that "[i]f there was evidence that [Driveway] had a duty to assess the slope of the area surrounding the catch basin, but failed to do so, or did so negligently, then * * * Fred Meyer would have a viable claim of negligence against [Driveway]." As we have seen, there is evidence from plaintiff's expert and a Driveway employee that Driveway had such a duty. That evidence is sufficient to meet the standard that Driveway itself recognizes. It is not necessary for us to decide whether Driveway is correct that the general foreseeability principles discussed in *Fazzolari* do not apply to Fred Meyer's claims against it.

Reversed and remanded.

---

[6] Contrary to Driveway's argument, any special relationship between Fred Meyer and plaintiff does not create a special relationship between Driveway and plaintiff and, thus, does not affect Driveway's liability under principles of general foreseeability.